IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| VISHAL BHAMMER,<br><br>Plaintiff,<br><br>v.<br><br>LOOMIS, SAYLES & COMPANY, L.P.,<br><br>Defendant. | DEMAND FOR JURY TRIAL<br><br>C.A. No. |

## COMPLAINT

For more than five months, Loomis, Sayles & Company, L.P. ("Loomis Sayles") engaged in a systematic campaign to persuade Vishal Bhammer ("Plaintiff") to quit his well-paying job in Hong Kong, move his young family to Singapore and become a Senior Analyst for its new hedge fund, Angleton Capital. Though successful in persuading Plaintiff to take the job, Loomis Sayles' campaign was reckless and dishonest. Many, if not most, of the representations made by Looms Sayles concerning the new fund simply were not true. The truth, as it turned out, was that Loomis Sayles was aware of facts concerning the fund that were causing it to seriously consider abandoning the venture altogether. But rather than disclose these facts to Plaintiff, Loomis Sayles concealed the truth and continued to perpetrate the myth that all was fine with the fund. Indeed, it was not until just two days before Plaintiff was scheduled to begin his new job—after he had quit his job in Hong Kong and made preparations to relocate his family to Singapore—that Loomis Sayles informed Plaintiff that it was abandoning the fund and, consequently, the job he had been promised in Singapore no longer existed.

Plaintiff brings this action seeking to be made whole for the extensive pecuniary harm caused by Loomis Sayles' misrepresentations, concealment of material facts of which it had a

duty to disclose, and wrongful interference with Plaintiff's preexisting employment and other advantageous relationships.  Plaintiff also seeks compensation for the extensive emotional distress that he has suffered, and continues to suffer, as a result of Loomis Sayles' unlawful conduct.

## Parties and Jurisdiction

1. Plaintiff is a citizen of the Republic of India and resides outside of the United States.

2. Loomis Sayles is a limited partnership organized under the laws of Delaware with principal offices located at One Financial Center, Boston, Massachusetts.

3. The Court has jurisdiction over the subject matter of this dispute pursuant to 28 U.S.C. §§1332(a) and 1332(c)(1). All parties are diverse: the plaintiff is a citizen of the Republic of India residing outside of the United States and the defendant is a citizen of Massachusetts. The matter in controversy exceeds $75,000.

4. The Court has personal jurisdiction over the defendant pursuant to M.G.L. c. 223A, § 2 and venue is proper in this district under 28 U.S.C. §1391 because the defendant maintains its principal place of business in the Commonwealth of Massachusetts.

## Facts

5. Loomis Sayles is an international investment management firm with over $230 billion of assets under management.

6. In or about 2014, Loomis Sayles began preparing to launch a new hedge fund that it referred to as Angleton Capital (the "Angleton Fund").

7. The Angleton Fund was envisioned as a long-short equity fund that would have a presence in Singapore and invest primarily in the Asian-Pacific markets.

8. To lead the Angleton Fund, Loomis Sayles hired Michael McDonough, a money manager with a long and successful track record of investing in the Asian-Pacific market.

9. Mr. McDonough was to serve as the Angleton Fund's Chief Investment Officer and report directly to Peter Marber, Head of Emerging Markets Investments at Loomis Sayles, who would also serve as Chief Executive Officer of the Angleton Fund.

10. When Loomis Sayles began its recruitment of Plaintiff in January 2015, Plaintiff was employed as Division Director of Macquarie, a global financial services firm located in Hong Kong, where Plaintiff resided with his wife and two young children.

11. Loomis Sayles' efforts to recruit Plaintiff were initially led by McDonough, with whom Plaintiff had previously had business dealings and maintained a friendly relationship.

12. Throughout the course of Plaintiff's recruitment, Loomis Sayles was aware of Plaintiff's employment with Macquarie and knew that Plaintiff lived in Hong Kong with his wife and two young children.

13. In order to recruit Plaintiff to join the Angleton Fund, Loomis Sayles sought to convince Plaintiff that the Angleton Fund presented an employment opportunity that warranted resigning from his position with Macquarie and relocating his family to Singapore.

14. Loomis Sayles' recruitment of Plaintiff was, in large-part, planned, coordinated and conducted from its headquarters in Massachusetts.

15. Loomis Sayles' recruitment efforts began with a Skype conference on or about January 28, 2015, during which McDonough represented to Plaintiff that the Angleton Fund had an appropriate and well-defined investment process, strategy and philosophy.

16. During the Skype conference referenced above, McDonough further represented to Plaintiff that Loomis Sayles had thoroughly reviewed the Angleton Fund's investment

3

process, strategy and philosophy, and that the Angleton Fund met the criterion used by Loomis Sayles in determining whether to launch a new fund.

17. Shortly after the Skype conference referenced above, McDonough provided Plaintiff a PowerPoint presentation that confirmed and elaborated on the investment process, strategy and philosophy that McDonough had described.

18. On February 2, 2015, Plaintiff informed McDonough that he had reviewed the PowerPoint presentation and was interested in having further discussions concerning joining the Angleton Fund.

19. On February 6, 2015, Plaintiff took part in a Skype conference with Marber during which Marber confirmed the representations that had been made by McDonough concerning the Angleton Fund. In addition, Marber represented to Plaintiff that employment with the Angleton Fund presented a unique opportunity because Loomis Sayles was committed to providing the Angleton Fund with the time and resources needed for success.

20. Shortly after the February 6th Skype conference described above, Plaintiff sent McDonough an email noting that he was pleased by the representations made by Marber concerning the Angleton Fund, and that he remained interested in possibly joining the Angleton Fund.

21. On or about March 26, 2015, Plaintiff met with McDonough in Hong Kong. During this meeting McDonough represented to Plaintiff that the Angleton Fund was progressing in accordance with the investment process, strategy and philosophy that they had discussed in January. McDonough further represented to Plaintiff that Loomis Sayles was proceeding slowly and carefully with the Angleton Fund to ensure its successful launch.

22. On or about March 31, 2015, Plaintiff had a meeting in Hong Kong with Jeff Dorr, an analyst who had been recently hired by Loomis Sayles to work on the Angleton Fund. Dorr confirmed McDonough's representations concerning the Angleton Fund's progress and reiterated that Loomis Sayles was proceeding slowly and carefully with the Angleton Fund to ensure its successful launch.

23. On or about April 15, 2015, Plaintiff met with Marber in Hong Kong.  Like McDonough and Dorr, Marber represented to Plaintiff that the Angleton Fund was progressing in accordance with the investment process, strategy and philosophy that had been disclosed to Plaintiff in January 2015, and that Loomis Sayles was proceeding slowly and carefully with the Angleton Fund to ensure its successful launch.

24. On or about April 17, 2015, Plaintiff took part in a telephonic conference with John Russell, Senior Counsel and Head of Human Resources for Loomis Sayles.  During the course of this call, Plaintiff stated his belief that success in the Asian-Pacific market required commitment over a long period of time and that some funds had failed in the past because they were unable and/or unwilling to make such a commitment.  Accordingly, Plaintiff specifically inquired of Russell whether Loomis Sayles was committed to the Angleton Fund and whether it would remain committed to the Angleton Fund for the long term.  In response, Russell represented to Plaintiff that Loomis Sayles was familiar with the challenges posed by the Asian-Pacific market, agreed that a long term commitment was needed to succeed in that market and that Loomis Sayles was making such a commitment with the Angleton Fund.

25. On May 1, 2015, Plaintiff accepted an offer of employment from Loomis Sayles to work as Senior Analyst for the Angleton Fund.

26. On May 13, 2015, Plaintiff informed Barbara Bosworth—a member of Loomis Sayles' Human Resources department—that Plaintiff would not give notice of his resignation to his current employer—Macquarie—until his background check was completed and Loomis Sayles confirmed that that there was no reason for Plaintiff to delay giving notice of his resignation to Macquarie.

27. On June 2, 2015 and June 3, 2015, Plaintiff received communications from Russell and Bosworth representing to Plaintiff that his background check had been completed, that there was no reason for Plaintiff to delay giving notice of his resignation to Macquarie, and that Plaintiff should do so as soon as possible.

28. In reliance upon the representations made to him by Loomis Sayles, including without limitation the representations specifically identified above, Plaintiff provided notice of his resignation to Macquarie on June 3, 2015, which was to become effective on July 5, 2015.

29. On June 4, 2015, Plaintiff reminded Russell that there were additional actions that Plaintiff would need to take in preparation for relocating his family to Singapore, such as terminating his residential lease, and sought guidance from Russell as to when he should proceed with those actions.

30. On June 6, 2015, Russell represented to Plaintiff that there was no reason to delay taking any of the actions needed to prepare relocating his family to Singapore, and that Plaintiff should proceed immediately with terminating his residential lease.

31. Between June 6, 2015 and July 5, 2015 Loomis Sayles continuously represented to Plaintiff that its prior representations concerning the Angleton Fund remained true and accurate, and that Loomis Sayles was unaware of any facts that would raise doubt as to the truth or accuracy of those representations.

6

32.  For example,

a.  On June 9, 2015 Plaintiff received an email from McDonough confirming that Plaintiff's employment with the Angleton Fund would begin in Singapore on July 20, 2015.

b.  On June 11, 2015, McDonough provided Plaintiff with a PowerPoint presentation reflecting that the Angleton Fund was pursuing the same investment process, strategy and philosophy that had been discussed in January.

c.  On June 24, 2015, Plaintiff received an email from Ivy Koch, a Loomis Sayles Vice President, confirming that Plaintiff's duties with the Angleton fund would require him to be in Boston from July 27, 2015 until the first week of September. The email further advised Plaintiff that "[t]here is not a need for you to extend your current lease" in Hong Kong, as Loomis Sayles would be assisting with his family's move to Singapore in September.

33.  Plaintiff's resignation from Macquarie became effective on July 5, 2015. Upon information and belief, Macquarie would have permitted Plaintiff to rescind his notice of resignation or otherwise maintain his employment at Macquarie had he sought to do so before his termination became effective.

34.  On July 16, 2015, Loomis Sayles suddenly disclosed to Plaintiff that it had decided to abandon the Angleton Fund and, consequently, that Plaintiff's job no longer existed. Loomis Sayles asserted that it had decided to abandon the Angleton Fund because (1) Loomis Sayles lacked the necessary systems to execute the Angleton Fund's strategy and (2) Loomis Sayles did not otherwise approve of the Angleton Fund's strategy.

35. Subsequently, on August 13, 2015, Loomis Sayles provided Plaintiff with the following written explanation for its decision to abandon the Angleton Fund: "[A] recent assessment of the fund's investment process, philosophy and performance led the CIO and others to conclude that the fund could not succeed without significant investments of time and resources to refine and develop the strategy to match Loomis Sayles' expectations. Loomis management assessed these factors and determined that the likelihood of Angleton successfully creating a differentiated product that met the firm's risk/return standards and attracted a reasonable asset base was too low."

36. At no time prior to July 16, 2015, did Loomis Sayles disclose to Plaintiff that the Angleton Fund lacked an appropriate and well-defined investment process, strategy and philosophy.

37. At no time prior to July 16, 2015, did Loomis Sayles disclose to Plaintiff that it was considering abandoning the Angleton Fund.

38. At no time prior to July 16, 2015, did Loomis Sayles disclose to Plaintiff that it was aware of facts that might cause Loomis Sayles to consider abandoning the Angleton Fund.

39. At no time prior to July 16, 2015, did Loomis Sayles disclose to Plaintiff that it was aware of facts that would raise doubt as to whether Plaintiff should resign from Macquarie or otherwise take action in preparation for his promised employment with Loomis Sayles.

40. Plaintiff's loss of employment has not only deprived of him of earnings but also legal residency in Hong Kong, where he has worked and lived with his family for the last five years and which presents the only reasonable chance for Plaintiff to find comparable employment in the future. Without legal residency, Plaintiff has been forced to pay significantly more for housing because he is unable to obtain a long-term residential lease. And because

Plaintiff has been only permitted to remain in Hong Kong on a fourteen day travel visa, he has been forced to leave his family and travel to a foreign country every two weeks in order to renew his travel visa. As such, Plaintiff has suffered, and continues to suffer, substantial harm as a result of Loomis Sayles' conduct, including both pecuniary loss and emotional distress.

## Count I
### (Misrepresentation)

41. Plaintiff realleges and incorporates Paragraphs 1 through 40 above as if fully set forth herein.

42. During the course of its efforts to recruit Plaintiff, Loomis Sayles made numerous representations to Plaintiff—both express and implied—concerning the Angleton Fund, including but not limited to the following:

    a. That the Angleton Fund had an appropriate and well-defined investment process, strategy and philosophy.

    b. That Loomis Sayles had fully and completely reviewed the Angleton Fund's investment process, strategy and philosophy.

    c. That Loomis Sayles' review of the Angleton Fund's investment process, strategy and philosophy had been conducted with due care.

    d. That Loomis Sayles was not aware of any facts that would raise doubt as to whether the Angleton Fund had an appropriate and well-defined investment process, strategy and philosophy.

    e. That Loomis Sayles had determined that the Angleton Fund met the criterion used by Loomis Sayles to determine whether to launch and support a new fund.

   f. That Loomis Sayles had exercised due care in determining that the Angleton Fund met the criterion used by Loomis Sayles to determine whether to launch and support a new fund.

   g. That Loomis Sayles was not aware of any facts that would raise doubt as to whether the Angleton Fund met the criterion used by Loomis Sayles to determine whether to launch and support a new fund.

   h. That Loomis Sayles would launch and support the Angleton Fund for at least one year.

  43. Plaintiff reasonably relied on the representations made by Loomis Sayles, including by—without limitation—resigning from his preexisting employment with Macquarie.

  44. Plaintiff suffered significant harm as a direct and proximate result of his reasonable reliance on the representations made by Loomis Sayles, including but not limited to the following:

   a. Loss of compensation since his resignation from Macquarie and further such continued loss, as Plaintiff is unlikely to find a position comparable to the one he held at Macquarie for some time;

   b. Loss of legal residency in Hong Kong, as Plaintiff forfeited his work visa when he resigned from Macquarie;

   c. Increased housing costs, as Plaintiff and his family cancelled their residential lease, as instructed by Loomis Sayles, and have been forced to live in short term housing until Plaintiff obtains a job and regains legal residency;

   d. Increased and frequent travel costs, as Plaintiff has been required to leave Hong Kong every fourteen days in order to renew his travel visa; and

   e. Extensive emotional distress.

45. The representations upon which Plaintiff reasonably relied and caused him harm were false, and Loomis Sayles knew or should have known that such representation(s) were false when made.

46. The representations upon which Plaintiff reasonably relied and caused him harm were made recklessly, and would not have been made if Loomis Sayles had exercised due care.

## Count II
### (Tortious Non-disclosure)

47. Plaintiff realleges and incorporates Paragraphs 1 through 46 above as if fully set forth herein.

48. Loomis Sayles had knowledge of facts concerning the Angleton Fund that, given the circumstances, Loomis Sayles had a duty to disclose to Plaintiff.

49. Loomis Sayles' breached the duty of disclosure that it owed to Plaintiff, and Plaintiff has suffered harm as a direct and proximate result.

## Count III
### (Tortious Interference)

50. Plaintiff realleges and incorporates Paragraphs 1 through 49 above as if fully set forth herein.

51. Loomis Sayles was aware of Plaintiff's preexisting advantageous relationships, including his employment with Macquarie.

52. Through the use of improper means, Loomis Sayles interfered with Plaintiff's preexisting advantageous relationships, including his employment with Macquarie.

53. As a direct and proximate result thereof, Plaintiff has suffered harm, including but not limited to extensive emotional distress and family displacement.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

1. Enter judgment in Plaintiff's favor on all counts;

2. Award Plaintiff monetary damages, including for emotional distress, with interest;

3. Award Plaintiff punitive damages;

4. Award Plaintiff his attorneys' fees and costs; and

5. Order such further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Vishal Bhammer hereby demands a trial by jury on all Counts that are so triable.

    */s/ Patrick J. Hannon*
Barbara A. Robb (BBO #639976)
Patrick J. Hannon (BBO #664958)
Shilepsky Hartley Michon Robb, LLP
155 Seaport Boulevard, 11th Floor
Boston, MA 02210
(617) 723-8000
Attorneys for Plaintiff

Dated: December 23, 2015